v. Leon, this Court set forth a very high standard for denying qualified immunity in the civil context or suppressing evidence in the criminal context under circumstances where a police officer has procured a warrant that is subsequently determined   to be invalid. Specifically, the Court held that the initial magistrate's determination is entitled to great deference and that you'll go behind that only in cases where the officer falsified information or omitted exculpatory information, where the affidavit was bare bones or there was some indication that the judicial officer did not perform the function. And then a catch-all provision where the warrant was so lacking an indicia of probable cause that no reasonable officer could even submit it for a magistrate's determination. And specifically in Malley, the Court said it had to be the actions of an officer that was plainly incompetent or knowingly violating the law. This case arises from a Ninth Circuit decision that we submit does not apply the Court's standards. Under circumstances where the officer submitted far from a bare bones affidavit, but a highly detailed factual affidavit that we submit provided probable cause for the search, or at least under the Court's qualified immunity jurisprudence, a reasonable officer could believe that the warrant had probable cause. Roberts. I suppose one new feature of the case is the fact that these officers submitted the affidavit to their superiors, who were attorneys. Correct. Have we addressed that in a prior case? I don't know that the Court has in, I believe, the exclusion context. I think I have seen it. I can't recall the case, but I believe it has. And the circuit courts certainly have talked about that as an indicia of good faith, the officer being willing to submit his work to someone else to review it so that it isn't good faith here. That's the problem, that we don't have a good faith test. We have a test that goes beyond good faith. Even if the officer is in good faith, according to the test we've set forth, if he's so stupid that he executes a warrant that no reasonable officer could think was correct, he's in the pot, right? Well, that's the test that the Court has set out, but it's a high test, plainly incompetent or knowingly violating the law. And I think what these are additional factual circumstances that show at least the officers trying to be careful, that this isn't something that's been then tossed off. Sotomayor, I thought in the Leon case that, in fact, just like the claim in this case, that the affidavit was submitted to supervisors and the Court created the Leon test in spite of that. So to say that we have a case on point, Leon itself is on point. It created the test in the face of supervisors' review. You're not actually – are you arguing a Nuremberg defense now? No. I'm just saying that it – That simply because supervisors decide that it's okay, that that exculpates someone from responsibility? Certainly not. And as I say, this comes up in the qualified immunity context repeatedly, and among the circuit courts they recognized it as a factor, but it's not dispositive, not by any means. I agree with that, Your Honor. All right. Then let's go to the other two ways that I think you're asking us to overrule our precedent. The first is using subjective information that a police officer knows but hasn't disclosed in the warrant. I'm having a little bit of difficulty understanding how an entire warrant regime that presumes that the magistrate has all pertinent information and that's why you would be let off the hook, how you can excuse a police officer when he doesn't place that information in front of the magistrate. The way that has generally come up has not been in the validity of the warrant for purposes of the Fourth Amendment, but in terms of qualified immunity for the officer or exclusion of the evidence under – or non-suppression, rather, under the good faith exception. And it's whether the officer, in light of the totality of the circumstances, might not have recognized that the warrant was deficient if the warrant otherwise isn't bare bones. And I think we – Leon itself in footnote 23 incorporates the Harlow standard of totality of circumstances. Sotomayor, tell me how this case, the bare bone affidavit, was sufficient. All it says is that this defendant is a member of a gang, but when the police officer is questioned, he's asked whether this crime at issue had any connection to his gang relationship and the answer was no. So how is the request in the warrant to search for all gang-related indicia anything more than the general warrant that our Founding Fathers, in part, passed the Fourth Amendment against? Oh, I mean, this is not per se a gang crime. This is almost like a gang crime. Without a doubt, it's not what we consider a gangland crime, one gang member against the other. It's a domestic assault by a gang member on his girlfriend with a sawed-off shotgun in public right after police officers that were there to protect her had left. So it's not gang-related in that sense, but I don't think that the gang membership is irrelevant to the investigation in this case. You know, as we note, and I think it's fairly recognized, gang members have means to procure and use weapons beyond that of ordinary people. Ginsburg, if you have a gang member and the crime has absolutely nothing to do with gang membership, that, I think, is the case here, it's a domestic assault, as long as you're a gang member, then every warrant can say, search for all gang-related information. That's essentially your position, isn't it? Now, it isn't, because it's always a fact-specific inquiry. The Court's made that clear in Illinois v. Gates and for Qualified Immunity in Anderson v. Craig. You said this is a domestic assault. There is no gang activity involved in that assault, right? Well, the gentleman's using a sawed-off shotgun, which is a weapon associated with gangs. I don't think it's a stretch for an officer to think that there might be some connection  So anyone who has a weapon and is a member of a gang, then can be, there can be a search for any and all weapons and material related to weapons. Well, it depends on the circumstances of the crime that you're investigating. Here we have an assault, we have a domestic assault with indications that the gentleman intends to continue it. Indeed, that's why the warrant is for all weapons, because it would make little sense to say you can go and you can find a sawed-off shotgun. I'm on to the part about all gang-related activity, when the crime has nothing to do with the gang. Let's stick to that. Then the gun is another issue. But this said, warrant to search for any and all gang-related items. Correct, Your Honor. But the point is, that's to be used to possibly tie Mr. Bowen to any weapon that was found. It's identification information. If they found, for example, the sawed-off shotgun there and his gang colors with his gang moniker, that would certainly help to tie him to that shotgun. But they didn't need to tie him to the shotgun. They had photographs of him with the shotgun. They have some evidence, but you don't have to stop just because you have some evidence. I mean, you're entitled to build your case as strong as you can. What do you need more than here he is with his gun? The defendant himself and his gun. I mean, what? Well, if you found the actual shotgun there wrapped in his gang colors with his gang moniker, I mean, it would make it an even stronger case. And I also note, say you find a .45 caliber pistol wrapped in his gang colors  I don't think you need to tie him to that. Sotomayor What do we do with the officer's testimony when he said, did you have any reason to believe there were any more weapons in the house? He said no. What, when an officer says that, why would then he think that he has complete license to go and ask for a warrant that's looking for more guns when there's only evidence of him possessing one? Because, again, the nature of gang membership is that gangs have more guns. Sotomayor You're answering Justice Ginsburg by saying that any time a gang member commits any crime, the police are entitled to seek a warrant that permits the search for anything they have in their home that relates to their gang membership and to guns. No. Because I think it depends. Here we have a crime that definitely involves a gun. Sotomayor That did not involve, by the officer's admission in your own, that wasn't gang-related. The assault, correct. But the manner in which he procures the weapon might dispose of the weapon and the nature of the weapon itself. Sotomayor But wait a minute. That has nothing to do with the gang, unless you're saying that you had proof that the gang did something illegally in helping him procure the weapon. What information did you have to suggest that? Again, the nature of a sawed-off shotgun is an illegal weapon in and of itself. Sotomayor Whose house was this? Agusta Millinder's house, Ms. Millinder's home. Sotomayor So it was not the defendant's house? Correct. Now, he was a foster son who had come back to stay. Breyer To what extent are we supposed to take things that aren't in the affidavit or the warrant itself as relevant? I mean, the only thing that bothers me as I read the affidavit, it doesn't say someone else is living in the house. At least, I didn't see that. And then the statement that Justice Sotomayor said, well, that's later on in a deposition. So if I were the magistrate sitting there and I read the affidavit, I might think I did have cause, at least, it's closed maybe, but to allow them to search for all the guns in the house, I might think they all belonged to him. In any way, I might think he thought that this could be used to other guns, could be used to go after her again. But when I read, he says, oh, I had no cause at all for thinking about it. Why isn't that the end of it, if we're supposed to take that into account? Well, I mean, again, I think as he sets forth his experience as a gang officer and the manner in which gangs dispose of, procure weapons. Breyer. He didn't say much about the gang. I'm asking you a specific question. I mean, if I was supposed to take into account his statement, I had no reason, to paraphrase it a little, for thinking that any of these guns, other guns, were going to be used for any purpose that's illegal. If he'd said that afterwards, if I take that into account, I say, why isn't that the end of the case? He had no cause to ask for the other guns, period. Now, that was the question, I think, roughly, that you were being asked, and I would like to hear the answer. I thought the answer would be, I don't have the right to take it into account. Now, do I or don't I? Well, I mean, it's an objective standard as to what a reasonable officer would do with the facts before him. Oh, wait. No. Before him or before the matter is, do I look at the affidavits and the warrant, or do I also look at things that are in neither of those documents, but were in the officer's head? For purposes of determining the fourth-amount validity of the warrant, the Court has said you look at the warrant. Under the Qualified Immunity Test and in the criminal suppression context of good faith, you can go outside that and look at the totality of what the officer knew, and if, in light of what he knew, whether he could have agreed it was so. So if I look at whether he was in good faith, if he has any training at all, I would guess that if he thought that there is no --" I don't remember the exact word --" no reason, no reason to believe there would be any weapons in the house, no reason to believe there would be any handguns in the house, and then I say I want a warrant to search for handguns in the house, it looks like you're asking for a warrant to search for that for which you have no reason to believe it's there. Now, that, I would have thought, was not good faith. That was contrary to the Fourth Amendment. Why isn't it? Because you still have under 1524a3, the California Penal Code, the ability to search for items that might be used with the intent to commit another crime. And I think if this was a constitutional search. Breyer, even though you can search a person's house, why don't I search the person's house for an atomic bomb, and I say, why are you doing that? He says, I have no reason to believe it's there. But that is a constitutional search. Well, again, I think going back here in terms of sitting back from good faith as opposed to probable cause, I don't think it's irrelevant to this guy. He's a gang member. I don't think it's unusual to think that while you might know specifically whether there's a handgun or not. Scalia, why are you going back to good faith? I mean, that's what I think is the problem with this case. If it's a good faith test, you come out with one result, but the test we've expressed is not good faith. This police officer could have been in the best of faith, but if he's a very bad police officer, he's in the soup, right? We don't have a good faith test for this purpose. Sure, but the standard is plainly incompetent or knowingly violating the law. And I think, again, there's enough detail in there that I don't think it's illogical to say there's some connection between gang membership and the possibility or even the fair probability that there are other weapons in a residence. Of course, I was just going to say, of course, you're making the case somewhat harder for yourself, because the issue here is whether it was reasonable for him to say, let me check and see what my superiors think about this, and then after that review, for him to say, let's see what the magistrate thinks about this, right? Correct. It's a further step back, because it's whether it's even reasonable for him to ask the magistrate for a determination. What causes there to think that the gang guns will be used to commit a crime? This is a gentleman who had just perpetrated an assault with a sawed-off shotgun. He didn't specify in terms of his threat that he would confine any further attack to a sawed-off shotgun. I just don't think it's a stretch of logic for an officer to believe that if he found a .45 caliber pistol there wrapped in gang colors, that he should be able to seize it to prevent a further attack. But the warrant didn't just authorize, you know, firearms wrapped in gang colors. It allowed him to search for any evidence of gang membership, right? Correct. But what possible purpose could that serve? Again, because the evidence of gang — indiction of gang membership could be used to tie him to things in the residence that you might find. Absolutely. I mean, it's an identifying characteristic of Mr. Bowen. If they were wrapped in it, yes. But we know he's a gang member. Sure. So all that the finding of gang membership decals or whatever they wear, all that would show is, indeed, this guy was a gang member. You know that? Well, excuse me, Your Honor. And present in that particular premises. It might show ownership or control. It might show access to the weapons. But they knew he was in that premise. I mean, that's — I really don't understand how you can possibly search for indiction of gang membership. When you know the man's a gang member, so what? Well, again, Your Honor, it ties him closer. It shows him there at their property. If we see a photograph of him on the property, it shows him there at their property. Tell me something. There's 10 people in this house. There's 10 people in this house, and as I understand it from the questioning, they also knew other gang members were there. So even if they found gang colors, did they tell the magistrate that — what would that prove when there's multiple members in the house? Well, you could find, again, gang member — indication of gang membership as to him indicating with his monitor. Well, but it's not limited to that. Well, correct. And he's also a member of several gangs. So you could find unique colors for one of his gangs and not for the others. What does that have to do with anything other than a general search? Because, again, it's evidence that could be found. And if you found a gang member, you could find evidence of other crimes. No, that's what it sounds like. No, because it would tie him to anything found in that residence. Again, if you found a 25-year-old — What about the provision for any photographs that depict evidence of criminal activity? That seems to me as general as you can get. Photographs depicting evidence of criminal activity. That actually is in the section that deals with indicia of gang membership. It's been carved out by Respondents here for the first time as a separate category. I note it was not argued down below that way. It was not viewed as a district court that way. It was not viewed by the circuit judges that way. And I do have to say that we're sitting here looking at 11 judges and, like, six attorneys have looked at this, and they've never brought that out separately. And now we're saying that should have jumped out to the officers separately. I think we cite Kessler saying that you should interpret that within the context of the entire provision, which is the indicia of gang membership provision. And if I may, I'd like to reserve the balance of my time for rebuttal. Roberts. Thank you, counsel. Mr. Srinivasan. Thank you, Mr. Chief Justice, and may it please the Court. When an officer follows the favored practice under the Fourth Amendment of obtaining a warrant from a neutral magistrate before conducting a search, the officer in all but the most narrow of circumstances can rely on the magistrate's independent determination of probable cause without fear. Ms. Srinivasan, there are two categories of materials here. One is the search for other guns. The other is the search for anything relating to gang membership. If we think that those two categories present different questions, if we think that one is more beyond the bounds than another, that the officer might have qualified immunity for, let's say, the guns, but not the evidence of gang membership, what would happen in this case at that point? Well, I think one of the questions that would arise is whether the one as to which you thought there was a problem would expand the scope in a meaningful way. Because if let's take Your Honor's hypothesis that there's less of a reason to be concerned about the firearms-related aspects of the warrant than the gang-related parts of the warrant, then the question would arise whether you would have a Fourth Amendment violation in the first place. Because if the gang-related parts of the warrant didn't expand the scope of the search in such a way that would implicate independent privacy interests, there wouldn't be a Fourth Amendment problem with that aspect of the warrant, and therefore you wouldn't have a qualified immunity issue for sure. And so what does that depend on, whether you would look for the indicia of gang memberships in places where you wouldn't look for guns? Is that right? That's right. You look at the two aspects of the warrant and you ask whether the second one, which is hypothesized to be the problematic one, would allow you to search in places or search with more intensity than the first one. Scalia. Well, if you're looking for photographs that show gang membership, I guess you could look through photograph albums. You wouldn't really look there for guns, would you? Well, but no. I think the relevant language is at page 52 of the Joint Appendix. That's what sets forth the two paragraphs at issue. And the first paragraph, which Justice Kagan supposes doesn't raise a problem and I'll engage in that assumption, it provides not only for searches of all firearms, but it provides, and we think legitimately, for searches of any receipts or paperwork showing the purchase, ownership, or possession of the handguns being sought. And so if — and paperwork certainly includes photographs, because if you find photographs of an individual carrying a particular firearm, that's good evidence. And so photographic evidence is within the scope of the first paragraph, not just the second. And so it does raise the question of whether the second paragraph increases the scope. The other point I'd raise in this respect is that in the second paragraph itself, the anchor sentence in some respects in the second paragraph is the second sentence, which discusses not gang-related indicia in particular, but articles of personal property tending to establish the identity of persons in control of the premise or premises writ large. And no — and that provision has not been seen to have a problem associated with thus far. The district court thought it was okay. The court of appeals at page 27A of the Petition Appendix seemed to assume it was okay. And that's understandable, because there are a legion of cases that support those sorts of provisions, including the one cited by the majority board. Alito, there's something very strange about the rule that we're applying here. A warrant was issued by a judge of the superior court, isn't that right? Yes, I believe so. And we're — so that judge, who's a lawyer and was appointed as a judge and presumably has some familiarity with the Fourth Amendment, found that there was probable cause to search for all of these things. And now we're asking whether a reasonable police officer who is not a lawyer and certainly is not a judge should have been able to see that this call that was made by a judge was not only wrong, but so wrong that it — you couldn't reasonably think that the judge might be correct. Is there some way to phrase this, if this rule is to be retained in any form, is there  Well, I think the Court has attempted to do that in Malley and Leon itself, because it has made clear that in the main, in all but the most narrow of circumstances, where a magistrate does find the existence of probable cause, the Court need not engage in any searching inquiry to determine that qualified immunity is appropriate. Scalia, the most narrow of circumstances is defined as a circumstance in which no reasonable police officer could have thought the warrant was correct. Why don't we adopt a good faith test for this as we do in other industries? Well, I think in some sense, Justice Scalia, you have, in response to two parts of your question. First of all, in defining what is objectively unreasonable in this situation, the Court has used some pretty strong language. In Malley, it spoke in terms of a magistrate who is grossly incompetent, and in Leon it spoke of officers. Policeman, policeman. No, it was speaking of a magistrate, actually, not the officers, because the point is that in order to find that officers are liable in this situation, the officers would have to be so sure that probable cause is lacking that only a grossly incompetent magistrate could sign off on the probable cause assessment. So it used gross incompetence with respect to the magistrate, which illustrates the degree to which the standard is heightened in this context. And in terms of whether good faith principles come into play in the qualified immunity context, what the Court said in Malley is that the same standard of objective reasonableness that governs in the good faith context for suppression purposes also governs in the qualified immunity context under 1983. And so I think there is room to import into the qualified immunity context these principles of good faith, like, for example, Mr. Chief Justice, the question of whether the officers in question ask superiors for their assessment of whether there's probable cause. And in Shepard, which was a suppression case, but in Shepard at page 989 of the opinion, the Court specifically made reference to the fact that the officer in that case had asked for a probable cause assessment. Scalia, I don't like this mishmash. Look, it's either good faith or it's however good his faith was, however well he showed his good faith by checking with his superiors or whatnot. If he made an incompetent decision, it's incompetent. And we should not mix the two, it seems to me. Well, that — I mean, I'm certainly — I don't want to urge anything upon the Court that would tend to water down the standards in the suppression context, but the only point I'd add to this, Justice Scalia, is that when you're looking at it from the perspective of a reasonable officer who's trying to assess whether he should go forward and ask for an assessment of probable cause from the magistrate, one consideration that seems natural to take into account is what actions the officer has taken, not just the quantum of proof that the officer has put in the affidavit, but what actions has he taken?  Has he asked for a superior? Scalia, it would be wonderful if the test was, was this — did this officer know that this was a bad affidavit and was acting in bad faith in executing it? If that was the test, then, indeed, the fact that he had checked with his superiors and all of that good stuff would have some relevance. The test, as outlined by the Court in Malley, is whether it's objectively reasonable for the officer to rely on the magistrate's assessment of probable cause. I thought the test was so lacking in indication of probable cause as to render official belief in its existence unreasonable. The Court did say that, Your Honor, and the Court put the formulation in a number of respects in Malley itself. It said we hold that the — this is at page 344 — we hold that the same standard of objective reasonableness that we applied in the context of the suppression hearing in Leon defines the qualified immunity of court in an officer whose request for a warrant allegedly caused an unconstitutional arrest, and I think that's where the Court then goes on and articulates what Your Honor just quoted. But then the Court later says in Leon, and this is at page — this is at page 345. In Leon, we stated that our objective good faith inquiry is confined to the objectively ascertainable question whether a reasonably well-trained officer would have known that the search was illegal despite the magistrate's authorization. The analogous question in this case, and it goes on to speak about the analogous question. Kagan. I guess the question, Mr. Srinivasan, is do you think that the current test, the test that's currently formulated, is sufficiently protective of police officers, or do you think that we need to change the test in order to give police officers  Srinivasan. We think if the current test is applied properly, it's sufficiently protective. And really the question is how it's applied. And in this case, it was applied in a way that I think is not sufficiently protective. Scalia. Of course, you could say that about any test, you know. If you apply it protectively, it will protect. Srinivasan. You could. And if you don't apply it protectively, it won't protect. I'd like a test that, you know, that protects when it ought to and doesn't protect when it ought not. Did you say apply protectively or correctly? Applied — well, I meant to say applied correctly. If applied correctly, I apologize if I misspoke, if applied correctly, it should sufficiently protect the police officer. In the background of this case is this question. A suspect has a weapon. He flees. As a general rule, do you think that warrants can say that when they search the home or the place where this person is likely to be, they can seize all weapons, just as a general rule? No. Not necessarily as a general rule, Justice Kennedy. It has to be context-specific. And here you had a lot more than that. You had an individual who had perpetrated an attempted murder who was a known member of a violent gang who had — who had perpetrated physical assaults against this victim before and who had directly threatened the victim that he would murder her if she ever went to the police and that he was going to kill her. So the test is whether or not he is likely to commit another crime? Well, that's the test. I thought the Petitioner said, I didn't have the time to interrupt, that under California law they can search for anything where he's likely to commit another crime. This is a very important point, Justice Kennedy. At page 48 of the Joint Appendix, the language of the relevant California statute is set forth. The California provision is section 1524A3 of the California Penal Code, and it authorizes a search for and seizure of items where they are possessed by a person with the intent to use them as a means of committing a public offense. And that's the provision that was invoked in this very warrant. And that — Finish your sentence. That provision is by no means an outlier. It's in Federal Rule of Criminal Procedure 41C3, and it's in the Model Penal Code of Prearrangement Procedure at section 210.3, subsection 1C. Thank you. Thank you, counsel. Mr. Wilson. Thank you, Mr. Chief Justice, and may it please the Court. In Malley v. Briggs, this Court ruled that police officers do not have immunity for seeking a search warrant when the warrant application is so lacking in indicia of probable cause as to render official belief in its existence unreasonable. That was all. It seems to me there's a lot more information here. Well, in Malley involved a mistake as to who the person under suspicion was who was mentioned in the wiretap. But the argument was made in Malley that is exactly the argument that is made here, which is that the police — one wants to encourage the police to seek warrants from the magistrates, and it would be undesirable if the police were not given effectively absolute immunity when they seek a warrant from a magistrate, except of course when they lie, which is a separate question. Here you had a police officer who assembled the information he had, truthful information in the affidavit, submitted it to his superiors who were lawyers, then it was submitted to the magistrate who was a judge. And what you have to say, it seems to me, is that a reasonably competent officer — not objective good faith or anything like that, a reasonably competent officer would say, you know, I know the lawyers in the office said this was okay, and I know the judge said it was okay, but I know more than them. I know not only that it's not okay, but it's so clearly not okay that I shouldn't have qualified immunity. That seems to me a pretty heavy burden to put on the officer. Clements. Mr. Chief Justice, I don't think there is any question that in the great majority of cases, officers who seek warrants from magistrates will be immune. And the Court made clear in Malley that it does happen that officers make mistakes, good faith mistakes, as to whether a particular set of facts amounts to probable cause, and in that context, when there is a good faith mistake, the officers will have immunity. But the Court also stressed that officers must minimize the risk of Fourth Amendment violations by exercising reasonable professional judgment in applying for search warrants. And so the Court ruled that an officer will not be immune if a reasonably well-trained officer, which is the term the Court used, would not have believed that the warrant affidavit established probable cause. Alito, is it the case here that a reasonably well-trained officer would not, would understand that this warrant was defective in authorizing a search for guns other than the shotgun in question, when a provision of the California Penal Code says that a search warrant may be issued to seize items intended for use in committing a crime? A reasonable, that a reasonable well-trained officer would not have sought the search warrant. I don't think the California Penal Code provision really adds anything to the rest of the case, because it says that you may seek items that are intended to be used in a crime, but you still have to know, you still have to have probable cause to believe that there are such items. And so the case in this case is that a reasonable well-trained officer would not have his former girlfriend in an attempt to kill her, and he is known to be a member of a violent gang, and he's threatened to kill her, and so a reasonable police officer could not think, well, he might have some other guns, and there would be an intent to use those in the commission of the crime that he's threatened to commit. Well, Mr. Bowen is not our client, Justice Alito. Our clients are. I'm sorry. Excuse me, Mr. Bowen. No, but this is an important point. Our clients are the innocent family that lives in the house. Well, that was just a — that was a misstatement. No, I understand, but I want to make the point that not only did the police have to have probable cause to believe that there is such an item, they also have to have probable cause to believe that it will be found in the place that they proposed to search. I mean, probable cause. All right. It was found that there was probable cause to believe that he was living in these premises. Isn't that correct? And you're not contesting that. Well, we are contesting that. We're contesting that. You're not contesting — it's not an issue before us. It's not an issue here. The Ninth Circuit decided the case on the assumption that there was probable cause to believe that Mr. Bowen would be found. Well, on the assumption that he was living in those premises, then what is wrong with a reasonable officer thinking he's tried to kill her in the past using one gun, he's a member of a gang, and he is very likely to have — to possess or have access to other guns? Those other guns may be found in the home where we believe he's living and he is intending to use them to carry out the threat that he's promised, the threat that he's made. Well, there are several — I think there are several problems with that. The first problem is the police don't have probable cause to believe that he has another gun, and they don't — and they certainly don't have probable cause to believe that any other such gun would be found at the Millender's house and — at the Millender's house where innocent people live. Now, it's not just — and it's not just that no other such gun would be found at the Millender's. The Millender's themselves have the right to possess handguns for lawful purposes of self-defense. So it's possible — of course it is possible to speculate about the things that the police might have— Kennedy, just suppose they're searching the suspect's own house, and there's a gun, and he's used a specific gun, a 12-gauge Remington shotgun, and they've — and they're looking for that, and these facts are the same, he may continue to elude the police, he may attack again. And they're searching the house, his own house, they see the one gun, they see a second gun, they cannot take the gun, the second gun? No, I would not — I would not say that, Justice Kennedy, because I think that— On what basis do you say they can take the second gun? Because if the police are in a place, lawfully in a place, pursuant to a properly narrowly drawn warrant, and they see something in plain view under this Court's plain view doctrine as articulated in Horton v. California, and there is probable cause to see something there to associate with criminal activity, yes, the police can seize that. But it's — there's a big difference between thinking about what the police can do if they enter someplace lawfully, and how they can react to that. Breyer, but what's the difference between what you just said and the situation here? You say if he sees the gun next to the bed, for example, or in the closet, and he's in the house looking for the sawed-off shotgun, he could seize it. He can't unless he has probable cause to think it might be used for a crime. And so how did that change? How did that change suddenly? Because he happened to see in the house something in the closet, and nothing else changed. Why now suddenly can he take it? I think the assumption, as I understood behind Justice Kennedy's question, was if the police see something, happen to see something in the house that is probable cause of a crime. No, but your argument is there was no probable cause for thinking that the guns in the house, if there were other guns, would be used for a crime. Now, your opponent, your brother there, said when I suggested that, oh, no, that's wrong. There is probable cause to think that any guns in the house would be used for a crime. He hasn't killed the girl yet, and one gun is as good as another. And he might well take one of those other guns and kill her. So there's probable cause to believe that the guns that are in the house, or at least one could reasonably think so, would be used for a crime. That was his response. Then, as to whether they are likely to be in the house, well, we know this. We know he has a sawed-off shotgun, and we know he is a member of a gang which is defined as a group of people engaged in definable criminal activity creating an atmosphere of fear and intimidation. So, well, people like that have guns. And where they live, there may well be other guns. So it is reasonable for me to think there are other guns in the house and reasonable for me to think that other guns in the house would be used for killing this girl if he can get to her. Okay. That's the argument. Now, what's the response to that? And you don't have to show more than that there is no probable cause. You have to show it wasn't reasonable to think that there was probable cause. Because the police did not have probable cause to believe there was any other gun. And they certainly didn't. He's a member of a gang which often has guns, and this expert knows that members of gangs have guns, and the definition of gang suggests they're likely to have guns, whether it's illegal to have them or not illegal. That's how he knows that that's how it is. But it doesn't, excuse me, it doesn't necessarily follow that there is probable cause to believe that he has an arsenal of weapons with him at an innocent third party's house. And the warrant authorized the search for and seizure of all guns, not just the guns belonging to Bowen. That is correct. In fact, they seized some of the Millender's guns, didn't they? That is correct. And why is it, if there's probable cause to believe that he has other guns, is there also probable cause to believe that any gun found in the house will belong to him? I think not. I would say not, Your Honor. But I think what I'm saying is that we've been talking about this for some time as if we're reviewing the adequacy of the warrant. We're not. We're reviewing the reasonableness of these officers' determination that there was probable cause. Do you think it is at all pertinent in addressing that question that the officer submitted the affidavit to support the warrant to Deputy District Attorney Jane Wilson, who reviewed it and signed off on it? I think it can't be dispositive, Your Honor. I didn't ask if it's dispositive. Is it relevant in any way? It could be relevant, but I would say it doesn't make the case in this case for a few reasons. First of all, generally speaking, of course, if you can't rely on the magistrate as a, you know, as a blanket rule that you're not immune, it's hard to understand why the fact that the Deputy District Attorney signed off on it would have essentially the same effect that the Court rejected in Malley and said, you know, there will be a limited set of circumstances where even if a magistrate issues a warrant, the officer will be liable. So I don't think that the district attorney and the superior are on the same crime fighting team as Detective Messerschmidt in this case. Also, we really have no information about what transpired in these conversations with the Deputy District Attorney. We don't know whether the DA said to Detective Messerschmidt, oh, you know, you're good, this is totally fine, or whether she said, you know, you're pushing the envelope here, but we might just find a magistrate who will go along with it, so, you know, so see what you can get. And the other point is, of course, relying on your superiors and on the DA is a double-edged sword in many cases, because that, in fact, that can establish or go a long way towards establishing Monell liability if you establish that there is a pattern of superiors and of Deputy District Attorneys. Roberts, do you want to encourage officers, when they're applying for search warrants, to have them reviewed by the Deputy District Attorney or not? Certainly we want them to encourage that, Mr. Chief Justice, but the point is, in Malley, this Court made clear that ultimately a reasonably well-trained officer must make a judgment himself as to whether the course of conduct that he proposes to undertake could reasonably be thought to be within the law. It's the officer who goes into the Mollender's house, seizes their arms, rifles through their drawers. It's the officer that does that. Well, the officers who are the Petitioners in this case are the officers who actually applied for the search warrant and who actually drafted the search warrant for the magistrate to sign. Now, they then were present at the search. I think there is a certain point. Oh, I didn't understand that. They did not execute the warrant? They were part of the executing team, yes. They were, there were. Did they enter the residence? They entered the residence, yes. There were other officers who I think it would be fair to say kind of more undertook the more concrete search of the, you know, of the house from top to bottom. I think there is a different question about when a line officer relies on his lead officer's instructions, and that was actually discussed by the Ninth Circuit in the Groh case, which later came up to this Court. But I think the standard that the Court set forth in Malley, the objective reasonableness standard, it's really, it's consistent with this Court's qualified immunity case law. Breyer, if I could just add a question. If that is the, we are using a purely objective standard. Another fact that I just want your reaction on is where he says, I told you never to call the cops on me. Now, he's tried to throw her out of the window or something. He's shot at her. He's trying to kill her in five different ways, and he's shouting, I'm going to kill you, and I told you never to call the cops on me. When I first read that, I thought, well, maybe he has something, maybe this is explained in part, not just domestic, but he has something to hide. He's afraid she's going to tell the police something. Now, could a person reasonably read those words and think he has something to hide here, his, and there's something going on, and it's not just domestic? Where does that lead us? Can we read it that way, and if we do read it that way, where does that lead you? Well, the Petitioners have never suggested that reading before, and indeed, the Petitioners have, indeed, Detective Messerschmidt testified at his deposition, no, I didn't have any reason to believe that the crime was gang-related. I mean, one of the curious things about the argument that the Petitioners are now making, which is that you can go outside the warrant and import into it the fact that he was a felon, one of the curious things about that is that the officers told the magistrate, this is a violent crime, no question, he is a gang member, not in support of probable cause, but in support of night service. They told the magistrate that they had reviewed all the various government databases, specifically including police databases, but did not tell the magistrate that he had any criminal record at all. But that's so. Ginsburg-Mills, Mr. Wilson, suppose they had had a warrant to search just for the sawed-off shotgun. You conceded that when they go into the house and they are looking all over, they could look in cabinets and drawers for the to find pieces of the shotgun. They come across other guns. They can at least secure, take those guns for their own safety. The other people in the house think somebody might use them. So what's the difference in the scope of the search, if they have a warrant just to look for the sawed-off shotgun or if they have a warrant that covers any guns? Well, a couple of responses. First of all, I think this Court's decisions in Groh and other courts make clear that when you are evaluating whether the Respondents were harmed by this violation of their constitutional rights, you have to look at the warrant that was actually applied for and executed, not you don't compare it to a hypothetical warrant that the police might have gotten if they had applied for a properly limited warrant.  if they had applied for a properly limited warrant. Roberts. That is correct, but the argument was made in Groh was, well, there really was no harm because surely the officers had probable cause, and if they had done their work right, there was, I think, no question that they would have gotten a warrant. And your answer, and again, it seems to me we keep separating these two inquiries, it's not whether the warrant showed adequate probable cause. It's whether or not the officers were reasonable in believing that it did. I understand. And the site, Groh, a no reasonable officer could think that a warrant that doesn't say anything at all about what's to be seized complied with the Fourth Amendment. But the argument was made in Groh that essentially this was sort of no harm, no foul, because surely a reasonable police officer could have obtained a valid warrant. And I was sort of analogizing that to the question that Justice Ginsburg made. I don't think that really is a question of qualified immunity at all. I think that may be a question of damages as to whether you could think, oh, well, perhaps the police might have gotten a valid warrant and so forth. But so I think, sure, it's possible to imagine that the police could have gotten a valid narrow warrant limited to search for the sawed-off shotgun and certainly not the gang-related activity, but they didn't. And one has to measure the harm that the Milinder suffered by the execution of this valid warrant. Sotomayor, So what happens below on that question, following up on the same question that Justice Kagan asked your brethren, which is, how about we find that it was reasonable to ask for the guns, but not for the gang-related materials? What does that do to your claim, and do you disagree with the manner in which he described what the inquiry would be below or before us now? Right. We do disagree. We would submit that the – that it's still invalid. But this is an issue that the courts of appeals have wrestled with under what is called the severance doctrine, which mostly is applied in exclusionary rule cases, not in qualified immunity cases. This Court has actually never explicitly endorsed the severance doctrine. And that is the question, suppose you have a warrant that is sort of half valid and half valid, or maybe half arguably valid, but half totally, you know, totally invalid, what do you do then? And the – I think at a minimum, the record would not permit this Court to – to resolve that, because we don't know from the record before us sort of what part of the search was conducted under what part of the – of the warrant. Alito, why couldn't an officer reasonably believe that there was probable cause to seize that to search for and seize that because it would link Mr. Bowen with this residence where they hoped to find the shotgun, and you dispute the fact that he is – that he is associated with that residence. Right. So, Justice Alito, there certainly are circumstances in which it is legitimate to seek for information that links a particular person to a particular location for purposes of establishing criminal liability. You know, there are many cases, for example, where the police come across a meth lab or something like that, and of course, in that situation, the police have a legitimate reason to – to want to know who is present, whose fingerprints are all over the place, because that would tend to establish that the person is – is in unlawful possession of meth. And why couldn't a reasonable officer think that that would be the case here? For – for a few reasons. First of all, the 120th Street address, the Millender's house, is totally irrelevant to the actual crime under investigation, which took someplace else. I mean, it's just a happenstance that the – that the police are searching – searching this place. It's not the place. This is not a tavern or a still. Alito, if they have probable cause to believe that the sawed-off shotgun is there, let's suppose they find the sawed-off shotgun, then there's going to be an issue at trial. Was it his sawed-off shotgun? And anything that links him to that residence is valuable evidence. But the gang-related indicia part of the warrant is, first of all, much, much broader than that. And secondly, the Petitioners have never argued until this Court that that was the purpose of the gang-related indicia part of the warrant. I mean, the Petitioners argued that the gang-related indicia part of the warrant is intended to establish his gang membership, because, for example, there might be a – an increase in penalty if something is a gang-related crime, even while it's not. Alito, this was a test of what they could – what a reasonable officer could have believed. Well, that's correct, but I think, you know, that does not mean that one can engage essentially in a completely post hoc rationalization of what the objective searched by the – to be accomplished by the warrant is. I mean, the warrant application itself says this is a spousal assault that the police are investigating. There's no suggestion that it's a gang-related crime in any rule.             Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. And it's hard to think of how inferences can be drawn reasonably from certain facts, from a particularly violent incident, from the use of a sawed-off shotgun, from the fact that this was not his home, from the fact that he was a gang member. And yet, the cases that you cite to us as suggesting what a reasonable police officer should know really are not cases that involve these facts at all. They're cases that state very broad, general propositions about Fourth Amendment law. So how can you get from those cases to what you're saying a particular police officer in a particular set of circumstances ought to know? Clements. Well, of course, this Court has never required that for qualified immunity purposes that the case, there be another case exactly on point. No, but there seems to be a very large gap between what this police officer has to think about and the cases that you cite. Respectfully, Justice Kagan, I don't think I agree. And I think that it's useful to look at two related but somewhat different lines of cases, particularly in the Ninth Circuit, but actually, you know, all across the board in the courts of appeals. The first line of cases says if the police have reason or have probable cause to look for a specific object or a specific, even a specific kind of object, that doesn't give them probable cause to look for the whole generic class of objects that are somewhat similar. The leading case on this in the Ninth Circuit is the Spolotro decision, but there are many cases coming both before and after that stand for that proposition. The principle has been applied in many contexts. For example, if you think that somebody is committing fraud for years 1998 and 1999 and there are billing records, you can't — you don't have probable cause to look for fraud, you know, for the entire records, billing records from 1950 to the present. If you think that if you see somebody run over somebody else in a green Nissan Sentra, you don't have probable cause to search for all vehicles, including a red Ford Explorer. This is really that principle in the context of firearms. And it — and Detective Messerschmidt had the information that the case involved a black sawed-off shotgun with a pistol grip.  And they were issuing — suppose the warrant just sought the — that particular weapon. They execute it, and they come to a room in this House, and it's got Mr. Bowen's name on it, and inside there's a gun cabinet, and there are a whole — there's a whole array of guns. Legal — let's say he legally possesses them. There's a — there's a — there are assault rifles, there are pistols, and then it's known that he's threatened to kill his girlfriend. You said, would the police be able to seize those? I think there are many things the police can do. First of all, an assault rifle is illegal, so that, per se, is not a bad thing. All sorts of legal weapons that could be used. Could they seize those? Well, the police — and so one question is, do the police know that Mr. Bowen is a felon? And here I think that is relevant, because they are dealing with not what is in the affidavit, but two on-the-spot judgments. So if the police — Alito, that's the — I'm hypothesizing he has a license for all of this. He's not a felon. Right. So I think there are — so I think if the police have probable cause, in light of the circumstances that they actually encounter at the house, that the gun — The circumstances are exactly the circumstances here, except for the two things that I changed. It's his room and it's his gun cabinet. The police may be able to secure all of those weapons, certainly so that they pose no danger to anybody else, and if Mr. Bowen is arrested and then — if he is to be released on bail or on pretrial release, it's a very common condition that he not have access to any weapons. The police, it may be required that he deposit those weapons with somebody else who, you know, is a proper custodian. Well, let's say they don't find him, he's still at large. They have to leave the weapons there. I don't think they necessarily have to leave the weapons there. On what ground could they seize them? If there is no — well, if he's not there, then it's not clear to me that he has a Fourth Amendment standing to challenge anything. It's his room. It's his room. But if he's — I mean, if he's — if they really believe that the police, that he is there, that it is his house, there is no reason to believe that his possession of any of these weapons is illegal, they are fire — the police can do things to secure the — Kennedy, I'm putting in my notes that you're not answering the hypothetical. I think they're — I'm not sure. I don't think the police can say, these weapons are just ours, we're going to take them, we can seize them, without — without probable — without more probable cause. They can't say, we're going to take them under — we're going to take them so that he can't use those to kill his girlfriend, which is what he's threatened to do. They just have to leave them there. And if he happens to come back and get those weapons and he kills her, well, that's just too bad. But if the police — the police have — if the police have probable cause to believe that he — on the spot, that he will use that weapons, yes, they can seize them under that provision of the California Penal Code, but that does not mean that they have probable cause when they apply for the — the warrant to think that those weapons either will exist — You really — you really are not answering my question. My question is, everything is exactly the same, except that it's his room and he's And your answer is, they can take them, in which case my question is, why wouldn't they have probable cause to search for those in the first place, or they can't take them, in which case I say, well, what about the possibility that he will come back, get those weapons, and carry out his threat using those weapons? They can — they may be able to take them, but that does not mean that they knew that they existed in the first place or that they would be at the Melender's house. That's — that, I think, is the fundamental difference. Ginsburg. What happened here when they — when they — they did seize weapons that belonged to the plaintiff, Mrs. Melender? They — they took them because they thought they were the defendants? They thought they were Bowens? It's not clear, Justice Ginsburg, they took them under the authority of the warrant. They did not provide an explanation as to specifically why they were — why the gun was seized, but the gun was seized. And this — I think this really — this point that they went into the Melender's house, searched the house from top to bottom, and seized the Melender's — Mrs. Melender's lawfully owned weapon really shows that this case is in the heartland of what the Fourth Amendment is concerned about. I mean, this is exactly the kind of case that the Framers were concerned about when they abolished the general warrants. This is the sort of case that they were concerned about. Roberts Do you contend that anything in the affidavit was false? Yes. False or at least misleading. And I think the proposition that Bowen, quote, unquote, resided at the 120th Street address and that that — and that that conclusion was drawn from, among other things, Detective Messerschmidt's search of government databases was materially misleading, because he didn't reside there. He may have been staying — hiding out there, and the search of the government databases, which are actually — the results are actually reprinted. Where did the — where the — may have been — may have been staying there? That's what Shelly Kelly told Detective Messerschmidt, which is, if I'm not mistaken It was materially false that they said he resides there, and what he knew is that he may have been staying. May have been hiding out there. When — especially when you combine that with all of the other information that Detective Messerschmidt actually obtained from the printouts of the databases which are in the JA, which in fact say that he hadn't been at the 120th Street address for several months and that his most recent address was 97th Street, where he lived with — where he stayed with, at least sometimes. Shelly Kelly and — and gave it out as his address. So that — that is in the respects why we think that this is materially misleading. Of course, we were not allowed to appeal that determination. So the — really only half of the case in that respect was before the court of appeals and is before this Court. Thank you very much. Roberts. Thank you, counsel. Mr. Coates, you have two minutes remaining. With respect to the hypothetical that Justice Alito postulated in terms of finding other weapons there, and response counsel, I'm going to say, well, we might go on the plain view doctrine. I think these are circumstances in which we note that you want to encourage officers, when they can, not to leave, but not to rely on, you know, exceptions to the warrant requirement. And here, if anything, the officers, in abundance of caution, attempted to get a warrant contemplating those precise circumstances, I don't think they should incur liability for — for going to that extra strap and that extra precaution. And, again, a step back from whether there's actually probable cause, but whether a reasonable officer could even believe that might be the case for purposes of sending it to a magistrate. And I think under those circumstances, you want to encourage officers to seek a magistrate's determination and not try and rely on on-the-scene exceptions to the warrant requirement to try and justify seizing weapons under those circumstances. With respect to Justice Scalia's concern about the probable cause to seize all guns as opposed to guns belonging to Bowen, and I think the notion is that Bowen being a resident and that being established for purposes of this contention at this point, still down the district court, but was assumed for purposes of the Ninth Circuit, that he was a resident, that as a resident that he would have access to that firearm. And I think that this was bolstered by the fact, again, his status as a gang member. We cite the Chicago Housing Authority v. Rose case, which talks about the manner in which gang members often store and use weapons at family members' homes. I mean, it's an unfortunate part of the gang culture. So it's not unreasonable for an officer to think there might be probable cause, at the very least, to seize any weapon found there, even if ultimately facts develop that it is, in fact, not Bowen's weapon. And this also goes to the indicia of gang membership and why it's reasonable even to ask, because that may be one of the means by which we could tie a particular weapon to Bowen, depending upon what's found during the search. This is a very high standard as established by this Court, which is essentially plainly incompetent or knowingly violating the law. And this is an officer that has not hidden the ball with respect to what transpired between Bowen and Kelly. He submitted it to his superiors to look at. He submitted it to an attorney. And while that's not dispositive, I think those are objective facts that a reasonable officer could say, I've done this, this, and this. There's no reason for me to believe that I'm violating the law in sending it to a magistrate. Thank you, counsel. Counsel. The case is submitted.